**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 3 2025

TAMMY H. DOWNS, CLERK
By:
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

DEBRA JENNINGS, individually and on
behalf all others similarly situated,

Plaintiff,

v.

GLOBE LIFE AND ACCIDENT
INSURANCE COMPANY,

Defendant.

Case No. **2:25-cv-172-BSM**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

This case assigned to District Judge **Miller**
and to Magistrate Judge **Moore**

Plaintiff, Debra Jennings for her Class Action Complaint, states:

**INTRODUCTION**

1.      This case involves one of the largest life insurance conglomerates in the nation,
Globe Life. Globe Life sells what are commonly known as "burial policies." Burial policies are
specifically designed to cover end-of-life expenses. Because of this, they are sold primarily to
elderly Arkansans, often of limited means.

2.      The only underwriting due diligence Globe Life appears to perform before issuing
burial policies in Arkansas is a short phone interview. During the phone interview, Globe Life asks
a few vague questions about the insured's health and then generates an "application" form that is
not filled out by or signed by the person buying the policy.

3.      When the policy owner dies and the beneficiary files a claim, Globe Life looks for
a pretext to rescind the policy and avoid paying. To avoid payment, Globe Life performs—for the
first time—an exhaustive review of the insured's medical records (which it could have done before
issuing the policy). Globe Life then claims the now-deceased policy owner "incorrectly" answered

1

one of its vague questions during the phone interview. Globe Life then claims it would not have provided a policy had the policy owner correctly answered its vague questions, rescinds the policy, and refuses to pay.

4.    Globe Life has a uniform practice of refusing to pay on life insurance policies based on non-disclosure of health conditions in an application even when the health condition bears no causal relationship to the policy owner's death. This practice is illegal in Arkansas and has been since 2011.

5.    In 2011, the Arkansas General Assembly outlawed the "Good Faith Defense," pursuant to which the life insurer could rescind a policy based upon a health condition not disclosed in an application if it could prove "in good faith" it would not have provided coverage had it have known about the undisclosed medical condition, regardless of whether that medical condition caused the policy owner's death. Since April 1, 2011, life insurers may only rescind policies when they prove: (1) fraud or (2) a "material" misrepresentation with "a causal relationship" to "the hazard resulting in a loss under the policy or contract." Ark. Code Ann. § 23-79-107.

6.    Globe Life has ignored this change to Arkansas law for over 14 years. As a standard practice, it denies claims based on the outlawed Good Faith Defense and lacks a claims process that complies with Arkansas law.

7.    Plaintiff brings this action individually and on behalf of a class of similarly situated Arkansans who have been victimized by Globe Life's illegal practices and seeks: (1) a declaration that Globe Life's claims practices for burial policies are illegal under Ark. Code Ann. § 23-79-107; and (2) damages, 12 percent penalty and attorney's fees as mandated Ark. Code Ann. § 23-79-208, and prejudgment interest for breach of contract. Individually, Plaintiff seeks compensatory and punitive damages for bad faith.

## PARTIES

8.      Plaintiff, Debra Jennings, resides in Marion, Arkansas. Her mother, Donna M. Hartley, lived in Harrisburg, Arkansas. Ms. Hartley purchased a life insurance policy from Defendant on October 31, 2023. Plaintiff is the beneficiary of the life insurance policy.

9.      Defendant, Globe Life and Accident Insurance Company ("Globe Life and Accident") is a foreign insurance company with its principal place of business at 3700 South Stonebridge Drive, McKinney, Texas, 75070. Globe Life and Accident issued a life insurance policy to Ms. Hartley on October 31, 2023 and then unilaterally rescinded that policy is response to a claim by Plaintiff after Ms. Hartley's death. Globe Life and Accident is registered in Arkansas and regularly conducts business in Arkansas by marketing, selling life insurance and processing life insurance claims in Arkansas.

10.      Globe Life and Accident is a subsidiary of Globe Life Inc. ("Globe Life Corporate"). Globe Life Corporate owns and operates an insurance business through its network of subsidiaries which it refers to as the "Globe Life family of companies." The Globe Life family of companies includes numerous insurance companies, including American Income Life Insurance Company, Liberty National Insurance Company, United American Insurance Company, and Family Heritage Life Insurance Company of America and Defendant, Globe Life and Accident, amongst others. The Globe Life family has more than $229 billion of coverage in force and "issues more life insurance policies and has more policyholders than any other life insurance company in the country, with more than 17 million policies in force." https://home.globelifeinsurance.com/about#history (last visited August 8, 2025). The Globe Life family of companies will be referred to collectively as "Globe Life."

## JURISDICTION AND VENUE

11.     This court has personal jurisdiction of Defendant pursuant to Arkansas' long arm statute. Ark. Code Ann. § 16-4-101.

12.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The class exceeds 100 members; at least one class member is a citizen of a different state from at least one defendant, including Plaintiff; and the aggregate amount in controversy exceeds $5,000,000. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57.

15.     Venue lies in this Court pursuant to 28 U.S.C.S. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this district.

## LEGAL BACKGROUND

16.     The Arkansas General Assembly has enacted numerous laws to protect consumers from abuse by insurance companies.

17.     For example, because life insurers have tried to avoid paying valid claims by arguing the policy owner omitted information about their health on policy applications, the Arkansas General Assembly adopted a two year "contestability" period for life insurance policies. Ark Code Ann. § 23-81-105. This means that after a life insurance policy has been in place for two years, the insurer cannot point to some claimed "misrepresentation" or "omission" made by the policy owner on the application to rescind the policy or otherwise avoid full payment. Ark Code Ann. § 23-81-105.

18.     The General Assembly also enacted Ark. Code Ann. § 23-79-107 to protect beneficiaries during the two-year contestability period. Section (a) of Ark. Code Ann. § 23-79-107 provides:

4

> A statement in an application or in negotiations for a life or accident and health insurance   policy or annuity contract by or on behalf of the insured or annuitant are representations   and   not   warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
> > (1)     Fraudulent; or
> > (2)     Material either to the acceptance of the risk or to the hazard assumed by the insurer.

19.     Section (c) of Ark. Code Ann. § 23-79-107 defines "material." It provides a misrepresentation in an application is material only "if there is causal relationship between the misrepresentation and the hazard resulting in a loss under the policy or contract." Ark. Code Ann. § 23-79-107(c).

20.     Therefore, under current Arkansas law, insurers have only two legal grounds to rescind a life insurance policy based upon the policy owner's application: (1) by proving fraud; or (2) by proving that the information not provided by the policy owner bears a "causal relationship" to the hazard resulting in the loss (i.e. death). An insurer cannot rescind a policy based upon non-disclosure of a health condition that did not bear a causal relationship to the policy owner's death.

21.     This has not always been the law in Arkansas. Prior to a 2011 amendment, Ark. Code Ann. § 23-79-107 allowed insurers to rescind policies for a third reason known as "the Good Faith Defense." The Good Faith Defense appeared at Section (a)(3) of the statute and provided that the insurer could rescind based on non-disclosure if:

> (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made to the insurer as required by the application for the policy or contract otherwise.

22.     But that changed on April 1, 2011, when the Arkansas General Assembly enacted Act 1054 of 2011 entitled: "AN ACT TO AMEND THE REQUIREMENTS FOR RESCISSION

5

OF LIFE AND HEALTH INSURANCE POLICIES; AND FOR OTHER PURPOSES." 2011 Ark. ALS 1054; 2011 Ark. Acts 1054; 2011 Ark. HB 2137.

23.    As noted by Judge Marshall in a decision over 10 years ago, Act 1054 of 2011 removed the Good Faith Defense as a basis for rescission of life insurance policies.[1] *Gann v. Household Life Ins. Co.*, 2015 U.S. Dist. LEXIS 179306, *5 (E.D. Ark. March 20, 2015) ("The statute underwent another change in 2011, when the General Assembly removed subsection (a)(3)'s good faith defense altogether, leaving behind only two grounds for rescission: fraud and materiality to the risk.")

24.    Therefore, since April 1, 2011, it has been well-established that it is illegal in Arkansas for an insurer to rescind a life insurance policy without proving fraud or a material misrepresentation causally related to the hazard which caused the loss.

---

[1]    Act 1054 of 2011 reads:

**SECTION 1.** Arkansas Code Section 23-79-107(a), concerning statements as representations in insurance applications, is amended to read as follows:

- **(a)** ~~All statements~~ A statement in ~~any~~ an application or in negotiations for a life or accident and health insurance policy or annuity contract ~~, or in negotiations therefor,~~ by or in behalf of the insured or annuitant ~~, shall be deemed to be~~ are representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

    **(1)** Fraudulent; or

    **(2)** Material either to the acceptance of the risk or to the hazard assumed by the insurer ~~; or~~.

    ~~(3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.~~

6

## FACTS

25.     On October 31, 2023, Donna Hartley (who was 80 years-old at the time) placed a phone call to Globe Life to inquire about a life insurance policy that she already owned at the time. She had learned that under her existing term policy, her benefits would terminate when she turned 90. She asked how she could "get on another plan that would continue if she was lucky enough to live to be 90 years old."

26.     The Globe Life salesperson on the telephone told Ms. Hartley that "she would have to apply for what is called the whole life policy." The salesperson quoted a $73.10 monthly cost on a $5,000 whole life policy and a $144.59 monthly cost on a $10,000 whole life policy. The Globe Life salesperson provided no other meaningful information about the whole life policy other than its cost and death benefit amount. The salesperson did not tell Ms. Hartley that by replacing her current policy, she could lose all coverage and her family would bear the cost of her funeral.

27.     Ms. Hartley then told the salesperson she would buy a new $10,000 whole life policy because she "already had a $10,000 policy and would just have to pay a little more per month, but that's okay."

28.     The salesperson then read the following "health questions" to Ms. Hartley:

1. Is the Proposed Insured currently disabled due to illness, confined to a hospital or nursing facility, or does the Proposed Insured require the use of a wheelchair? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
2. In the past 3 years, has the Proposed Insured been diagnosed or treated by a member of the medical profession for:
   (a) Cancer, coronary artery disease, or any disease or disorder of the heart, brain or liver? . . . . . . . . . . . . . . .
   (b) Chronic kidney disease or kidney failure, muscular disease, mental or nervous disorder, chronic obstructive lung disease, drug or alcohol abuse, or hospitalized for diabetes? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   (c) Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC) or test results indicating exposure to the Acquired Immune Deficiency Syndrome virus? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
3. Does the Proposed Insured have any chronic illness or condition which requires periodic medical care or may require future surgery? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

29.     Ms. Hartley answered "no" to each of these vague questions read over the phone. The salesperson did not tell Ms. Hartley that an arguably "incorrect" answer to one of these vague questions such as "do you have any chronic condition?" could cause her to lose coverage.

7

30.    Indeed, on the "application" form Globe Life and Accident later generated from Ms. Hartley's call that was not filled out or signed by Ms. Hartley, Globe Life and Accident counseled: "A yes response to the following questions does not automatically make you ineligible for coverage."

31.    Globe Life and Accident then issued to Ms. Hartley a new whole life policy with an effective date of November 3, 2023. ("the Policy") that replaced her old term life policy. The Policy is attached to this Class Action Complaint as **Exhibit A**. The Policy called upon Ms. Hartley to pay her monthly premiums in exchange for Globe Life's payment of $10,000 upon her death to her beneficiary, Plaintiff.

32.    Ms. Hartley paid her monthly premiums until she died on January 8, 2025.

33.    Ms. Hartley's death certificate lists "cardiogenic shock" as the cause of her death.

34.    On January 14, 2025, Plaintiff, as beneficiary of the Policy, submitted a valid claim along with proof of death. Plaintiff intended to use the $10,000 to pay for her mother's funeral and submitted the funeral bill along with her claim.

35.    Pursuant to the Policy, Globe Life and Accident was required to pay "within 30 days of proof of death and all necessary claim papers needed in order to pay the claim properly." **Ex. A at GWLA001034**. A failure by Globe Life and Accident to pay within 30 days entitled Plaintiff to "interest from the date of death of the Insured until the date the claim is paid at a rate not less than that is required by law." *Id*.

36.    After receiving the claim, Globe Life and Accident set about looking for a pretext to rescind the Policy and avoid payment.

37.    Globe Life and Accident sent letters to Plaintiff representing that payment under the Policy was conditioned on Plaintiff signing off on medical record authorizations for her

8

mother's protected health information. Some of the letters came from another member of the "Globe Life family," American Income Life Insurance Company, thus demonstrating that the Globe Life family of companies coordinate their claims efforts.

38.    On April 1, 2025, Globe Life and Accident sent Plaintiff an unsigned and unaddressed form letter rescinding the Policy and stating Globe Life and Accident's "findings" as follows:

> When the application was completed by telephone on 10/31/2023, questions were answered regarding Donna M. Hartley's past medical history. The insurance policy was issued based on the answers given in the application. . . .
>
> Since the policy was less than two years old, medical information was required to evaluate this claim. The medical information received indicates prior medical conditions which include but may not be limited to a history of left bundle-branch block, nonrheumatic mitral (valve) annulus calcification, depression, anxiety, peripheral vascular disease, neuropathy, and hypertension. Ms. Hartley was on medications and required periodic medical care for these conditions. Based on the medical history, Questions 2(a), 2(b), and 3 were not answered correctly.
>
> If the Company had been aware of Donna M. Hartley's medical history at the time of the application, we would have been unable to approve them for coverage under this policy.

**Exhibit B attached hereto.**

39.    Globe Life and Accident thus unilaterally rescinded the contract based on "Good Faith Defense" that was outlawed by the General Assembly through Act 1054 of 2011. *Id.* ("If the Company had been aware of Donna M. Hartley's medical condition, we would have been unable to approve them for coverage under this policy.")

40.    Globe Life and Accident did not even claim that "[L]eft bundle-branch block, nonrheumatic mitral (valve) annulus calcification, depression, anxiety, peripheral vascular disease, neuropathy, and hypertension" are causally related to cardiogenic shock. *Id.* It certainly did not provide any proof that any of those conditions are causally related to cardiogenic shock.

41.     As shown by the form letter rescinding the Policy, Globe Life and Accident has a uniform practice of denying Arkansas claimants' life insurance claims based on the Good Faith Defense. The form letter appears automatically generated and is not signed. Also, it appears no one at Globe Life and Accident evaluated whether the medical conditions listed in the form letter were causally related to cardiogenic shock.

42.     Plaintiff sent a letter to Globe Life and Accident asking for the information Globe Life and Accident used in denying her claim. Globe Life and Accident refused to provide any meaningful information other than a recording of Ms. Hartley's telephone conversation with the Globe Life sales representative on October 31, 2023.

43.     Denying claims based on the Good Faith Defense has been illegal in Arkansas for over 14 years. Given that Globe Life issues more policies than any other insurer in the country, it is likely that thousands of Arkansans' claims have been denied by Globe Life and Accident on these illegal grounds.

44.     Burial policies are typically secured by vulnerable, elderly Arkansans. When Globe Life and Accident illegally rescinds these policies, the beneficiaries would reasonably believe they lack the necessary means to take on one of the largest insurance companies in the country.

45.     This is not the first time Globe Life has been caught using claims practices for its burial policies that violate a particular state's law. In 2019, after an investigation by New York officials, Globe Life was forced to sign a consent order with the State of New York admitting that it was violating New York law by rescinding burial policies without proving qualifying grounds for rescission under New York law. Globe Life agreed to pay a hefty fine, make restitution to victims, and submit to reprocessing claims under the supervision of a third-party neutral. **Exhibit C attached hereto.**

## CLASS ALLEGATIONS

46.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on

behalf of herself and all others similarly situated, as a representative of the following Class:

> All beneficiaries of life insurance policies sold by Globe Life and
> Accident to policy owners who were residents of Arkansas and
> whose life insurance claims were denied, in part of whole, or
> rescinded based on the Good Faith Defense or grounds other than a
> determination of fraud or material misrepresentation with a causal
> relationship to the hazard producing the loss from since September
> 3, 2020.

47.    Excluded from the Class is Globe Life and Accident and Globe Life, Inc., and their

officers, directors, and employees, any entity which they have controlling interest in, are a parent

or subsidiary of, or which is otherwise controlled by Globe Life and Accident and Globe Life, Inc.,

their legal representatives, attorneys, heirs, predecessors, successors, and assignees. Also excluded

are the Judges and Court personnel in this case and any members of their immediate families.

48.    Plaintiff reserves the right to modify or amend the Class definitions, including but

not limited to creating additional subclasses.

49.    This Action meets the requirements for Federal Rule of Civil Procedure 23 for the

following reasons:

50.    *Numerosity*. The members of the Class are so numerous that joinder of all members

is impracticable. Plaintiff believes the Class include thousands of people. The precise number of

Class members is unknown but may be ascertained from Globe Life and Accident's records.

51.    *Commonality*. There are numerous questions of law and fact common to the Class

relating to Globe Life and Accident's business practices challenged herein, and those common

questions predominate over any questions affecting only individual Class members. The common

questions include, but are not limited to:

- Whether Arkansas law permits a "good faith" denial standard for life insurance claims;

- Whether Globe Life and Accident's uniform practices for life insure claims violate **Ark. Code Ann. § 23-79-107.**

- **Whether Globe Life and Accident has breached its contracts with the class members.**

52.     *Typicality.* Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices engaged in by **Globe Life and Accident**, as described herein.

53.     *Adequacy of Representation.* Plaintiff is an adequate representative of the Classes and because Plaintiff has sustained damage caused by Globe Life and Accident's uniform conduct and is entitled to damages, a statutory penalty, and attorney's fees. Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers regarding financial transactions. There is no hostility of interest between Plaintiff and the unnamed members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action and Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

54.     *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

55.     *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since

12

the financial resources of Globe Life and Accident are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Globe Life and Accident's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

56.    *Declaratory Relief.* Globe Life and Accident has denied life insurance claims on grounds that apply generally to the Class, so declaratory relief is appropriate.

## COUNT I: BREACH OF CONTRACT
### (On behalf of Plaintiff and the Class)

57.    Plaintiff realleges and incorporates the foregoing paragraphs by reference.

58.    Plaintiff is the beneficiary of a life insurance policy purchased by her mother, Ms. Hartley.

59.    Pursuant to the Policy, Globe Life and Accident was required to pay Plaintiff $10,000 upon Ms. Hartley's death "within 30 days of proof of death and all necessary claim papers needed in order to pay the claim properly." **Ex. A at GWLA001034**. A failure by Globe Life and Accident to pay within 30 days entitled Plaintiff to "interest from the date of death of the Insured until the date the claim is paid at a rate not less than that is required by law." *Id*.

60.    On January 14, 2025, Ms. Hartley submitted a claim along with proof of death.

61.    Globe Life and Accident then repeatedly demanded Plaintiff sign medical authorizations for her deceased mother, although nothing in the Policy required her to do so. Nevertheless, Globe Life and Accident had "all necessary claim papers needed in order to pay the claim properly" in advance of April 1, 2025 at the very latest.

62.    Rather than perform its contractual obligations, Globe Life and Accident breached the Policy by not paying within 30 days. It instead unilaterally rescinded the policy on illegal grounds and then refused Plaintiff's request for information backing up its recission.

63.    Globe Life and Accident's breach proximately caused Plaintiff damage through denial of the $10,000 payment owed under the Policy.

64.    The members of the Class are similarly situated and suffered damage when Globe Life and Accident unlawfully rescinded life insurance policies in breach of their policies. They are all beneficiaries of policies with the same or similar language. They all had their claims denied or their policies rescinded by Globe Life and Accident based on illegal grounds. Their contracts have all been similarly breached because Globe Life and Accident did not pay the face value of their policies within 30 days of receiving "all necessary claim papers needed in order to pay the claim properly." Globe Life and Accident asserted illegal grounds for rescinding their policies and may not now assert some new grounds for recission under Arkansas law. *Bankers Natl. Ins. Co. v. Hemby*, 217 Ark. 749, 754, 233 S.W.2d 637 (1950) ("[W]here an insurer denies liability for a loss on one ground, at the time having knowledge of another ground of forfeiture, it cannot thereafter insist on such other ground if the insured has acted on its asserted position and incurred prejudice or expense by bringing suit, or otherwise.")

65.    Plaintiff, on behalf of herself and the Class, seeks damages in the amount of the face value of their policies minus any premiums refunded, attorney's fees and the 12 percent penalty mandated by Ark. Code Ann. § 23-79-208, the interest owed under their policies for late payment, and any other prejudgment interest allowed under Arkansas law.

### COUNT II: BAD FAITH
### (On behalf of Plaintiff)

66.    Plaintiff realleges and incorporates the foregoing paragraphs here.

67.    In 2011, the Arkansas General assembly eliminated the Good Faith Defense as a basis for denying life insurance claims.

68.    The Arkansas General Assembly has also outlawed certain "[u]nfair claims settlement practices" by insurers, including:

- Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

- Refusing to pay claims without conducting a reasonable investigation based upon all available information;

- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

- Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

- Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts of applicable law for denial of a claim or for the offer of a compromise settlement; and

- Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by those insureds;

Ark. Code Ann. § 23-66-206.

15

69.     Globe Life and Accident intentionally, willfully, and illegally violated Ark. Code Ann. §§ 23-66-206 and 23-79-107 by setting up a claims process that denies claims based upon the Good Faith Defense and then denying Plaintiff's claim on that basis.

70.     Globe Life and Accident misrepresents coverage facts to avoid paying claims, acts in a dishonest and oppressive manner by forcing beneficiaries to litigate to recover life insurance benefits without attempting in good faith to pay benefits owed under Arkansas law.

71.     Globe Life and Accident's actions are dishonest, illegal, and characterized by ill-will, malice and hatred. Globe Life and Accident oppresses its policy holders, many of which are elderly and poor owners of low value burial policies, as well as their beneficiaries.

72.     Globe Life and Accident's actions constitute bad faith under Arkansas law.

73.     Globe Life and Accident's actions have proximately caused damage to Plaintiff through non-payment of the amounts owed under the Policy.

74.     Plaintiff seeks compensatory damages, punitive damages, costs, and prejudgment interest.

## COUNT III: DECLARATORY JUDGMENT/INJUNCTION
### (on behalf of Plaintiff and the Class)

75.     Plaintiff realleges and incorporates the foregoing paragraphs by reference.

76.     An actual, present controversy exists regarding the legality of Globe Life and Accident's reliance on the Good Faith Defense without proving fraudulent misrepresentation or material misrepresentation causally related to the loss as required by Ark. Code. Ann. § 23-79-107.

77.     The Class members, including Plaintiff, face a real and immediate threat that Globe Life and Accident will continue to deny payment based on illegal grounds, thus denying them present use of those funds and warranting forward-looking relief.

78.     Pursuant to 28 U.S.C. § 2201 et seq. and Federal Rule of Civil Procedure 57, Plaintiff requests a declaration that Globe Life's practice of denying or rescinding life insurance claims or policies based on the Good Defense and without proving fraud or material misrepresentation causally related to the hazard producing the loss –violates Ark. Code Ann. § 23-79-107.

### JURY DEMAND

79.     Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

80.     **WHEREFORE**, Plaintiff, individually and on behalf of the Class, requests that this Court appoint Jennings & Earley, PLLC as interim class counsel under Fed. R. Civ. P. 23(g)(3); certify the Class, appoint Plaintiff Class Representatives, award compensatory damages, punitive damages, attorney's fees and the 12 percent statutory penalty mandated by Arkansas law, costs, prejudgment interest, and award all other just and proper relief.


DATE: September 3, 2025                          Respectfully submitted,


Jason W. Earley (AR Bar 2004166)
Christopher D. Jennings (AR Bar 2006306)
**JENNINGS & EARLEY PLLC**
500 President Clinton Ave., Ste. 110
Little Rock, AR 72201
Tel: 501-255-8569
jason@jefirm.com
chris@jefirm.com

*Counsel for Plaintiff & the Proposed Class*



# EXHIBIT A

 **Globe Life**

Globe Life Center
Oklahoma City, OK 73184
1-972-540-6542

---

Dear Policyholder:

Congratulations! Donna M Hartley is now one of over 3.8 million Americans whose life insurance is with Globe Life And Accident Insurance Company.

Your coverage is now in force and will remain in force as long as the premiums are paid on time. You will receive a premium notice about 15 days before your next premium is due, unless you selected the credit card or bank draft payment option. Then your premium will be periodically deducted when it is due.

The amount of insurance will not decrease AND the premium you have established now will never be increased!

Please take a moment and verify the application information you provided. You'll find a copy of the application near the back of your policy. If everything is correct, sign your application and put this with your policy in a safe place. If any information is wrong, please correct, sign, and return the corrected application or call (972) 540-6542 and ask one of our customer service representatives for assistance, or e-mail us at cs@globelifeins.com.

You have joined millions of other Americans who rely on Globe's strength, integrity and personal service. Thank you for entrusting Globe with this important part of your financial planning.

Very truly yours,

*Jason Haney*

*President and Chief Executive Officer*
*Direct to Consumer Division*

P.S. Help us help you. Always give us your policy number when making changes or requesting information.

Beneficiary Designated is:
Debra Jennings

████6106
Donna Hartley
Harrisburg AR 72432

## GLOBE LIFE AND ACCIDENT INSURANCE COMPANY
## PRIVACY NOTICE
### This notice is for informational purposes only. No response is required.

Globe Life And Accident Insurance Company cares about protecting your privacy. This Notice explains what information we collect and how we use that information to provide the product(s) you requested, as well as how you may restrict certain disclosures of your information. This Notice also explains how we protect the security and confidentiality of your information.

**Collection of Information**
To provide the product(s) you requested, we may collect personal information about you from: your completion of an application or other forms; your transactions with us and other companies; or a consumer reporting agency, such as MIB, Inc.

**Access and Correction of Information**
Upon request, you can access personal information about you in our files. If you think any of your information is inaccurate, please notify us in writing. We will investigate and make changes as needed.

**Investigative Consumer Reports Notification**
As part of our underwriting procedure, an investigative consumer report may be obtained through a consumer reporting agency, which will provide applicable information concerning character, general reputation, personal characteristics, and mode of living. You may request to be interviewed in connection with the preparation of the report, and upon request, may receive a copy of the report.

**Disclosure of Information**
We may disclose the following personal information about you, either during or after your relationship with us:

* Information from your application or other forms, such as your name, address, social security number and beneficiaries; and
* Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums, and payment history.

We may disclose personal information about you to:
* Financial companies, such as insurance companies and insurance agents; and
* Non-financial companies, such as MIB, Inc.

In addition, we may disclose the information described above to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements. We may also disclose information about you to our affiliates and nonaffiliated third parties as permitted by law. Such information may be used by our affiliates for marketing purposes.

**Confidentiality and Security of Information**
We restrict access to personal information to those employees who need to know that information to provide the product(s) you requested. We maintain physical, electronic, and procedural safeguards to protect the confidentiality and security of this information.

**Revisions to Our Privacy Policy**
We may amend our policies described in this Notice at any time and will notify you of any revisions as required by law. We also post our online Privacy Notice at our website: www.globelifeinsurance.com. You may have additional rights under state laws, and we will follow the privacy law in your state if that law is different than the policy described in this Notice.

**How to Contact Us**
If you have any questions regarding your rights or the contents of this notice, please write to:

Globe Life And Accident Insurance Company
ATTENTION: Privacy Officer
P.O. Box 8080
McKinney, TX 75070-8080

## PRESCRIPTION DRUG HISTORY

Our decision may have been made in whole or in part on a prescription report we obtained from Milliman. The decision was not Milliman's, and cannot be explained by them. You may request a free copy of this report from Milliman within 90 days (15800 Bluemound Rd., Ste. 400, Brookfield, WI 53005 or 877-211-4816). You may dispute any report information with Milliman.

07/18    GLPRIVI

**POLICY 0059Y6106**

**IMPORTANT NOTICE:**
**REPLACEMENT OF LIFE INSURANCE OR ANNUITIES**

You are contemplating the purchase of a life insurance policy or annuity contract. In some cases this purchase may involve discontinuing or changing an existing policy or contract. If so, a replacement is occurring. Financed purchases are also considered replacements.

A replacement occurs when a new policy or contract is purchased and, in connection with the sale, you discontinue making premium payments on the existing policy or contract, or an existing policy or contract is surrendered, forfeited, assigned to the replacing insurer, or otherwise terminated or used in a financed purchase.

A financed purchase occurs when the purchase of a new life insurance policy involves the use of funds obtained by the withdrawal or surrender of or by borrowing some or all of the policy values, including accumulated dividends, of an existing policy, to pay all or part of any premium or payment due on the new policy. A financed purchase is a replacement.

You should carefully consider whether a replacement is in your best interests. You will pay acquisition costs and there may be surrender costs deducted from your policy or contract. You may be able to make changes to your existing policy or contract to meet your insurance needs at less cost. A financed purchase will reduce the value of your existing policy and may reduce the amount paid upon the death of the insured.

We want you to understand the effects of replacements and ask that you answer the following questions and consider the questions on the back of this form.

1.  Are you considering discontinuing making premium payments, surrendering, forfeiting, assigning to the insurer, or otherwise terminating your existing policy or contract?    ____YES    ____NO

2.  Are you considering using funds from your existing policies or contracts to pay premiums due on the new policy or contract?    ____YES    ____NO

Please list each existing policy or contract you are contemplating replacing (include the name of the insurer, the insured, and the policy or contract number if available) and whether each policy or contract will be replaced or used as a source of financing:

| INSURER<br>NAME | CONTRACT OR<br>POLICY # | INSURED OR<br>ANNUITANT | REPLACED(R) OR<br>FINANCING (F) |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

Make sure you know the facts. Contact your existing company or its agent for information about the old policy or contract. If you request one, an in force illustration, policy summary or available disclosure documents must be sent to you by the existing insurer. Ask for and retain all sales material used by the agent in the sales presentation. Be sure that you are making an informed decision.

I certify that the responses herein are, to the best of my knowledge, accurate:

_____
Applicant's Signature and Printed Name                                      Date

PLEASE COMPLETE AND SIGN THIS FORM AND RETURN TO OUR OFFICE IN THE ENCLOSED BUSINESS REPLY ENVELOPE. THANK YOU FOR SELECTING US FOR YOUR INSURANCE NEEDS.

GREPC

A replacement may not be in your best interest, or your decision could be a good one. You should make a careful comparison of the costs and benefits of your existing policy or contract and the proposed policy or contract. One way to do this is to ask the company or agent that sold you your existing policy or contract to provide you with information concerning your existing policy or contract. This may include an illustration of how your existing policy or contract is working now and how it would perform in the future based on certain assumptions. Illustrations should not, however, be used as a sole basis to compare policies or contracts. You should discuss the following with your agent to determine whether replacement or financing your purchase makes sense:

**PREMIUMS:**     Are they affordable?
Could they change?
You're older––are premiums higher for the proposed new policy?
How long will you have to pay premiums on the new policy? On the old policy?

**POLICY VALUES:**     New policies usually take longer to build cash values and pay dividends.
Acquisition costs for the old policy may have been paid, you will incur costs for the new one.
What surrender charges do the policies have?
What expense and sales charges will you pay on the new policy?
Does the new policy provide more insurance coverage?

**INSURABILITY:**     If your health has changed since you bought your old policy, the new one could cost you more, or you could be turned down.
You may need a medical exam for a new policy.
Claims on most new policies for up to the first two years can be denied based on inaccurate statements.
Suicide limitations may begin anew on the new coverage.

**IF YOU ARE KEEPING THE OLD POLICY AS WELL AS THE NEW POLICY:**
How are premiums for both policies being paid?
How will the premiums on your existing policy be affected?
Will a loan be deducted from death benefits?
What values from the old policy are being used to pay premiums?

**IF YOU ARE SURRENDERING AN ANNUITY OR INTEREST SENSITIVE LIFE PRODUCT:**
Will you pay surrender charges on your old contract?
What are the interest rate guarantees for the new contract?
Have you compared the contract charges or other policy expenses?

**OTHER ISSUES TO CONSIDER FOR ALL TRANSACTIONS:**
What are the tax consequences of buying the new policy?
Is this a tax free exchange? (See your tax advisor)
Is there a benefit from favorable "grandfathered" treatment of the old policy under the federal tax code?
Will the existing insurer be willing to modify the old policy?
How does the quality and financial stability of the new company compare with your existing company?

**GREPD**

# GLOBE LIFE AND ACCIDENT INSURANCE COMPANY

### A NEBRASKA STOCK CORPORATION
### ADMINISTRATIVE OFFICE: GLOBE LIFE CENTER, OKLAHOMA CITY, OKLAHOMA 73184

We will pay the Proceeds from this policy when We receive due proof that the insured died while this policy was in force.

Upon the death of the insured, if premiums have been paid in advance, We will refund the unearned portion of such premiums paid for any period beyond the end of the policy month in which death occurred. The refund will be made to the beneficiary unless such refund of premiums is due to another person pursuant to contract provisions.

The consideration for this policy is the application and the first premium.

This policy is issued and accepted subject to all the provisions set forth on the following pages.

We have put this policy into effect as of the Policy Effective Date. Policy years, premium due dates, and policy anniversaries are measured from the Policy Effective Date.

RIGHT TO RETURN: Within 30 days after receiving this policy or the Policy Effective Date, if later, You may return it by mailing it to Us. Upon its return, We will consider the policy void from the start and refund any premium received by Us.

### NON–PARTICIPATING WHOLE LIFE POLICY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* POLICY SPECIFICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PREMIUM SCHEDULE

| PREMIUM PERIOD | MONTHLY | QUARTERLY | SEMI–ANNUAL | ANNUAL |
|---|---|---|---|---|
| FIRST MONTH | $1.00 | | | |
| THEREAFTER | $144.59 | $425.74 | $835.42 | $1606.58 |

| PERIOD | DEATH BENEFIT |
|---|---|
| For Life | $10,000 |

**POLICY NUMBER:** ▇▇▇6106

**INSURED:** Donna M Hartley

**POLICY EFFECTIVE DATE:** 11/03/23

**ISSUE AGE/SEX:** 80/FEMALE

**LOAN INTEREST RATE:** 8.00% IN ARREARS

**PREMIUM CLASS:** STANDARD

**ADDITIONAL BENEFITS INCLUDED:** NONE

The guaranteed interest rate for nonforfeiture values is 3.75%

READ YOUR CONTRACT CAREFULLY. This is a legal contract between You and the Company. The contract sets forth, in detail, the rights and obligations of both You and Us. IT IS, THEREFORE, IMPORTANT THAT YOU READ YOUR CONTRACT CAREFULLY.

## ALPHABETIC GUIDE TO YOUR CONTRACT

| | Page | | Page |
|---|---|---|---|
| Assignment | 4 | Non–Participation | 4 |
| Beneficiary | 3 | Nonforfeiture Provisions Options Available | 5 |
| Cash Loans | 5 | Ownership | 3 |
| Contract (The) | 2 | Payment of Proceeds | 4 |
| Definitions | 2 | Premiums | 2 |
| Grace Period | 3 | Reinstatement | 3 |
| Incontestability | 4 | Suicide Exclusion | 4 |
| Indebtedness & Repayment | 5 | Table of Nonforfeiture Values | 6,7 |
| Misstatement of Age (or Sex) | 4 | | |

## DEFINITIONS

The Insured – The person whose life is insured under this policy while the policy is in force.

You, Your, Owner – The current Owner of this policy, unless changed as allowed in the policy. The Owner has all the rights this policy provides unless otherwise stated in the policy.

We, Us, Our, Company – Globe Life And Accident Insurance Company at its Administrative Office in Oklahoma City, Oklahoma.

Proceeds – The amount We pay when the Insured dies or the policy matures. The Proceeds equal the Amount of Insurance minus any indebtedness on the policy.

Attained Age – The Issue Age (shown in the Policy Specifications) plus the number of years and completed months since the Policy Effective Date.

Beneficiary – The Beneficiary is the person or party named in the application to receive the Proceeds at the Insured's death.

Amount Of Indebtedness – The Amount of Indebtedness is the unpaid premium plus the balance, plus interest, of all existing policy loans.

## THE CONTRACT

Read Your policy carefully. This policy is a legal contract. The entire contract is this policy and the attached application. Unless fraudulent, all statements made by or on behalf of anyone covered by this policy are considered representations and not warranties. No statement can cancel this policy or be used in Our defense if We refuse to pay a claim unless it is found in the attached application.

The provisions of this contract can be changed only by a written agreement signed by Our President, a Vice President, Our Secretary or an Assistant Secretary.

We are not bound by any promise or representation made by an agent or anyone else.

## PREMIUMS

The Policy Specifications show the Premium Schedule. The first premium is due by the Policy Effective Date. Premiums are payable at Our Administrative Office or to an authorized agent. We will add to the Death Benefit the unused portion of any premium which was paid for the period beyond the end of the policy month of the Insured's death. This premium refund shall not apply to any premium we waived under any provision of this policy.

## GRACE PERIOD

After You have paid the first premium, if You do not pay the premium on or before the due date, You will have a 31 day Grace Period in which to pay the premium. The policy stays in force during the Grace Period. If the Insured dies during the Grace Period, We will deduct the unpaid premium from the eligible Proceeds.

## REINSTATEMENT

If this policy has lapsed, You can reinstate it so that it provides coverage again. You have until 5 years after the due date of the unpaid premium to reinstate the policy, but You cannot reinstate it if You have surrendered it for cash.

To reinstate this policy, You must do all of these:

1.  Provide proof which satisfies Us that the Insured is insurable.

2.  Pay all overdue premiums.

3.  Pay interest on those premiums at a yearly interest rate of 6%, compounded annually.

4.  Pay or reinstate any indebtedness which exists on this policy. Interest charged from the due date of the unpaid premium to the date of reinstatement will be at a yearly interest rate of 6%, compounded annually.

## BENEFICIARY

While the Insured is alive, You can change the Beneficiary as often as You like, but You cannot change a Beneficiary who was named without the right of revocation.

To change a Beneficiary, file a satisfactory request with Us. The change will take effect when recorded by Us. Once We record it, the change will take effect from the date You signed Your request, but the change will not affect any payment We made or action We took before the change was recorded.

## OWNERSHIP

The applicant is the Owner of this policy unless a different Owner is named in the application. You have the right during the Insured's life to receive every benefit and to exercise every right contained in the policy or allowed by Us; but if any irrevocable Beneficiary has been named, the Beneficiary's written consent shall be required before You may take any action concerning this policy.

The Owner may be changed or a contingent Owner may be named or changed by filing written notice with Us. We must approve the form and may require You to present the policy for endorsement. The change will take effect the day You sign the notice but it will not affect any action taken by Us before the notice was recorded at Our Administrative Office.

If a contingent Owner and the Insured are both living when You die, the contingent Owner will become the new Owner. If no contingent Owner survives, then at the Owner's death, ownership shall vest in the Insured; but if the Insured is a minor, ownership shall vest during minority in the first named Beneficiary. If the first named Beneficiary is not living, ownership shall vest during the Insured's minority in the parent or legally appointed guardian.

## ASSIGNMENT

Only You may assign this policy. We are not bound by an assignment until it has been filed with Us. We are not responsible for the validity or sufficiency of an assignment. A claim made under an assignment is subject to proof and the extent of the assignee's interest. The interest of an assignee comes before that of a Beneficiary or survivor Owner. An assignee's interest also comes before election of an option. An assignment is not a transfer of ownership. An assignee cannot change the Beneficiary or exercise ownership rights.

## PAYMENT OF PROCEEDS

We pay the Proceeds for this policy from Our Administrative Office. We first pay assignees. Then We pay the Beneficiaries based on the designation in force at death. If there is no designation or surviving Beneficiary, We pay the Proceeds to the Insured's estate. If a Beneficiary dies within 15 days after the Insured, but before the Proceeds are paid, We pay the Proceeds as though the Beneficiary had died before the Insured.

If We fail to pay Proceeds within 30 days of receipt of proof of death and all necessary claim papers needed in order to pay the claim properly, the payment will include interest from the date of death of the Insured until the date the claim is paid at a rate not less than that required by law.

If Proceeds are payable to Your estate or to a Beneficiary who cannot execute a valid release, We may pay benefits up to $3000.00 to someone related to You or the Beneficiary by blood or marriage whom We consider to be entitled to such Proceeds. We will be discharged to the extent of any such payment made in good faith.

## INCONTESTABILITY

Unless You do not pay the premiums due, We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the Policy Effective Date. (This provision does not apply in the case of benefits allowed for total and permanent disability or accidental death.)

## SUICIDE EXCLUSION

If the Insured, whether sane or insane, commits suicide within 2 years from the Policy Effective Date, We only refund the amount of the premiums already paid, less indebtedness. If the state in which this policy is delivered requires by statute a suicide period of less than 2 years, or other conditions regarding sanity or insanity, the laws of that state will govern.

## MISSTATEMENT OF AGE (OR SEX)

In the event of misstatement of the Insured's age (or sex), We will pay the Proceeds that the premium paid would have purchased had the age (or sex) been correctly stated.

## NON-PARTICIPATION

This contract does not participate in Our surplus or earnings.

GWLA001                          Page 4                          GWLA001034

## LOAN PROVISIONS
### CASH LOANS

You may use this policy as the sole security to take out a cash loan from Us. This policy must be in force other than as extended term and You must make Us an assignee. The amount of the loan, plus interest through that policy year, can be as much as the loan value available at that time. The loan value is:

1. The cash value at the end of that policy year, less
2. any unpaid part of that year's premium, and less
3. the balance, plus interest, of all existing policy loans.

Interest on the loan is due at the rate specified in the Policy Specifications. Any overdue interest will be added to the loan and will bear interest at the same rate. We can defer granting a loan for the period law permits, but not beyond 6 months after We receive Your loan application. We cannot defer granting a loan to pay premiums on one of Our policies.

### INDEBTEDNESS AND REPAYMENT

You can repay all or part of any cash loans, or loan interest any time before the end of the Grace Period for any unpaid premium. When the total Amount of Indebtedness equals or exceeds the loan value, the coverage from this policy will end, but it will not end until 31 days after We mail a notice to Your last known address. We also notify any assignees We have on record.

## NONFORFEITURE PROVISIONS
### OPTIONS AVAILABLE

These nonforfeiture options are available to You once this policy has a cash value. If a premium is not paid when it is due, You can choose one of these options by filing a written request with Us within 60 days after the premium due date.

1. CASH SURRENDER: You can surrender this policy for its net cash value. The net cash value is:

   The cash value shown in the Table of Loan and Nonforfeiture Values
   (or an extension of it); MINUS

   The Amount of Indebtedness on this policy.

   We can defer paying the cash surrender value for the period law permits, but We cannot defer beyond 6 months after the date of Your written request and surrender of the policy.

2. PAID UP INSURANCE: You can continue this policy as non-participating paid up insurance for a level reduced amount. The new amount of insurance will be as much as the net cash value can buy at the net single premium rate for the Insured's then Attained Age. The new amount of insurance will be payable at the same time and under the same conditions as this policy.

3. EXTENDED TERM INSURANCE: You can continue this policy as non-participating paid up term insurance for a shorter period.

   The amount of coverage will be the amount of insurance minus the Amount of Indebtedness.

   The period of term insurance will be the period the net cash value will purchase at the net single premium rate for the Insured's then Attained Age.

4. AUTOMATIC PREMIUM LOAN: Under this provision, We pay any premium not paid within its grace period by charging it, plus interest, as a loan against this policy. We also include the unpaid premiums for all attached supplementary agreements. We lend the amount needed to pay the premium.

   An automatic premium loan is subject to the same interest rate and terms as any other policy loan. You need not assign the policy to Us as long as the loan value at the end of that policy year can cover all indebtedness, plus interest on the policy.

As long as the policy is still in force, You can resume paying premiums at any time, without providing satisfactory proof that the Insured in insurable.

You and any assignees can withdraw this provision at any time by giving Us written notice, but Your notice will not affect any loans We make before it takes effect.

Option 4 will take effect automatically unless You choose another option within 60 days after the due date of the unpaid premium.

Insurance continued as paid-up or extended term will not include additional benefits provided by riders which may be attached to this policy. You can surrender paid up and extended term insurance at any time. The amount You will receive will be equal to the net single premium for that insurance at the Insured's then Attained Age. If the surrender is within 31 days after a policy anniversary, the cash value will not be less than on the anniversary.

### NONFORFEITURE VALUES

This table shows the values available under the policy at the end of completed policy years. All values are subject to the Amount of Indebtedness on the policy. When You have paid premiums for part of a policy year, We adjust the values to fit the part paid for. If You ask, We will supply the values for any years not shown.

Cash values are computed by the Standard Nonforfeiture Value Method on the assumption that all premiums have been paid. The cash value of any paid-up or extended term insurance is the net single premium for such insurance at the Attained Age of the Insured. These values are based on the mortality table and interest rate listed below the Table of Nonforfeiture values.

The cash values and paid-up nonforfeiture benefits are not less than those required by law. The method of computation has been filed with the insurance supervisory official of the state in which this policy is delivered.

## TABLE OF NONFORFEITURE VALUES

**END OF YEAR NONFORFEITURE VALUES**
**(values upon completion of Policy Year)**

| POLICY YEAR | AMOUNT OF INSURANCE DURING POLICY YEAR | CASH VALUE | AMOUNT OF PAID-UP INSURANCE | EXTENDED TERM INSURANCE | |
|---|---|---|---|---|---|
| | | | | YEAR | DAYS |
| 1 | $10,000 | $0.00 | $0 | 0 | 0 |
| 2 | 10,000 | 447.90 | 610 | 0 | 316 |
| 3 | 10,000 | 956.08 | 1,278 | 1 | 227 |
| 4 | 10,000 | 1,450.64 | 1,902 | 2 | 64 |
| 5 | 10,000 | 1,928.74 | 2,486 | 2 | 211 |
| 6 | 10,000 | 2,387.18 | 3,026 | 2 | 316 |
| 7 | 10,000 | 2,824.36 | 3,526 | 3 | 24 |
| 8 | 10,000 | 3,239.96 | 3,988 | 3 | 77 |
| 9 | 10,000 | 3,633.06 | 4,414 | 3 | 112 |
| 10 | 10,000 | 4,003.20 | 4,802 | 3 | 132 |
| 11 | 10,000 | 4,351.60 | 5,160 | 3 | 144 |
| 12 | 10,000 | 4,679.88 | 5,490 | 3 | 147 |
| 13 | 10,000 | 4,988.86 | 5,794 | 3 | 141 |
| 14 | 10,000 | 5,283.02 | 6,080 | 3 | 125 |
| 15 | 10,000 | 5,568.14 | 6,350 | 3 | 100 |
| 16 | 10,000 | 5,840.72 | 6,604 | 3 | 68 |
| 17 | 10,000 | 6,094.14 | 6,836 | 3 | 29 |
| 18 | 10,000 | 6,326.86 | 7,046 | 2 | 355 |
| 19 | 10,000 | 6,537.38 | 7,232 | 2 | 325 |
| 20 | 10,000 | 6,724.34 | 7,398 | 2 | 296 |
| At age 65 | N/A | N/A | N/A | N/A | N/A |

The Cash Surrender Values are not less than those required by law. Nonforfeiture values and net single premiums are calculated using the 2017 Commissioners Standard Ordinary (CSO) Age Last Birthday mortality table at 3.75%, the guaranteed interest rate stated on page one and curtate functions. Extended Term Insurance is calculated using the 2017 CSO Age Last Birthday mortality table at 3.75%, the guaranteed interest rate stated on page one and curtate functions.

This policy is signed for Us by Our President and Secretary.

_Secretary_                          _President_

---

**IMPORTANT NOTICE**

This notice is to advise You that, should any problems arise concerning this insurance, You may contact the following:

Consumer Service Department
Globe Life And Accident Insurance Company
Globe Life Center
Oklahoma City, Oklahoma 73184
Telephone: (405) 752-5500

Agent's Name: _____
Telephone: _____

Arkansas Insurance Department
Consumer Services Division
1 Commerce Way, Suite 102
Little Rock, Arkansas 72202
Telephone: (800) 852-5494 or (501) 371-2600

Agent's Address: _____
_____

---

**NONPARTICIPATING WHOLE LIFE INSURANCE**

**FORM GWLA001**

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY * A LEGAL RESERVE STOCK COMPANY**
ADMINISTRATIVE OFFICE: GLOBE LIFE CENTER * OKLAHOMA CITY, OK 73184
## APPLICATION FOR INSURANCE
IMPORTANT: Please be sure each question on the application is answered

| Proposed Insured  Name (First, M.I., Last) | Date of Birth | Sex | Amount of Insurance |
|---|---|---|---|
| Donna M Hartley | ▓▓/43 | FEMALE | $10,000 |

Address ▓▓▓▓▓▓▓▓ Apt. _____ Telephone (870) 208-3076
City Harrisburg  State AR  Zip 72432  E-Mail Address _____

| Beneficiary Name | Relationship to Proposed Insured |
|---|---|
| Debra Jennings | Daughter |

Please answer the following questions. A "yes" response does not automatically make you ineligible for coverage.

|   | YES | NO |
|---|---|---|
| 1. Is the Proposed Insured currently disabled due to illness, confined to a hospital or nursing facility, or does the Proposed Insured require the use of a wheelchair? | __ | x |
| 2. In the past 3 years, has the Proposed Insured been diagnosed or treated by a member of the medical profession for: | | |
| (a) Cancer, coronary artery disease, or any disease or disorder of the heart, brain or liver? | __ | x |
| (b) Chronic kidney disease or kidney failure, muscular disease, mental or nervous disorder, chronic obstructive lung disease, drug or alcohol abuse, or hospitalized for diabetes? | __ | x |
| (c) Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC) or test results indicating exposure to the Acquired Immune Deficiency Syndrome virus? | __ | x |
| 3. Does the Proposed Insured have any chronic illness or condition which requires periodic medical care or may require future surgery? | __ | x |
| 4. In the past 5 years, has the Proposed Insured had his or her driver's license suspended or revoked; been convicted of any felony; or is the Proposed Insured currently incarcerated? | __ | x |
| 5. Does the Proposed Insured intend to replace or change any existing life insurance policies or annuities in connection with this application? | X | __ |

If yes, list company name:  On file at Home Office

### ACKNOWLEDGEMENT AND AUTHORIZATION

I AM ENCLOSING THE INITIAL PREMIUM AND UNDERSTAND THAT THE INSURANCE APPLIED FOR WILL BECOME EFFECTIVE ON THE DATE THIS APPLICATION IS APPROVED IN THE ADMINISTRATIVE OFFICE OF GLOBE LIFE AND ACCIDENT INSURANCE COMPANY. Should the application be declined, the amount paid will be refunded. I hereby authorize MIB, Inc., if it has any records of me or my health, any pharmacy or pharmacy benefits manager that possesses prescription history about me, and any consumer reporting agency to give any and all such information to Globe Life And Accident Insurance Company. Health information obtained will not be re-disclosed without my authorization unless permitted by law, in which case it may not be protected under federal privacy rules. This authorization shall be valid for two years from this date and may be revoked by sending written notice to Globe Life And Accident Insurance Company. I acknowledge receipt of the MIB, Inc. Pre-Notice. A photographic copy of this authorization will be as valid as the original.

Any person who, with intent to defraud or knowing that he is facilitating a fraud against the insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud, which is a crime punishable by fine and imprisonment.

Date          10/31/23          _____ Donna M Hartley          / Insured
APPLICANT – OWNER SIGNATURE / RELATIONSHIP TO PROPOSED INSURED

This application with check or cash should be mailed in the return envelope enclosed. Make check payable to Globe Life And Accident Insurance Company.

8662(03)

---

# LIMITATIONS AND EXCLUSIONS UNDER THE ARKANSAS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

---

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy and contract owners who live in this state and, in some cases, to keep coverage in force. Please note that the valuable extra protection provided by the member insurers through the Guaranty Association is limited. This protection is not a substitute for a consumer's careful consideration in selecting insurance companies that are well managed and financially stable.

---

## DISCLAIMER

The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") provides coverage of claims under some types of policies or contracts if the insurer or health maintenance organization becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are significant limits and exclusions. Coverage is always conditioned on residence in the State of Arkansas. Other conditions may also preclude coverage.

The Guarantee Association will respond to any questions you may have which are not answered by this document. Your insurer or health maintenance organization and agent are prohibited by law from using the existence of the association or its coverage to sell you an insurance policy of health maintenance organization coverage.

You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.

The Arkansas Life and Health Insurance Guaranty Association
c/o The Liquidation Division
1023 West Capital
Little Rock, Arkansas 72201

Arkansas Insurance Department
1 Commerce Way, Suite 102
Little Rock, Arkansas 72202

---

The state law that provides for this safety net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"), which is coded at Ark. Code Ann. Sections 23-96-101, et seq. Below is a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act, nor does it in any way change any person's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

## COVERAGE

Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

(please turn to back of page)                     (0121)    GN031A

## EXCLUSIONS FROM COVERAGE

However, persons owning such policies are NOT protected by the Guaranty Association if:

* They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

* The insurer was not authorized to do business in this state; or

* Their policy or contract was issued by a hospital or medical service organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:

* Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;

* Any policy of reinsurance (unless an assumption certificate was issued);

* Interest rate yields that exceed an average rate;

* Dividends, voting rights, and experience rating credits;

* Credits given in connection with the administration of a policy by a group contract holder;

* Employer plans to the extent that they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

* Unallocated annuity contracts (which give rights to group contractholders, not individuals);

* Unallocated annuity contracts issued to or in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC"), regardless of whether the FPBC is yet liable;

* Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution);

* Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by state or federal law;

* Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders, or other documents which do not meet filing requirements, claims for policy misrepresentations, and extra-contractual or penalty claims; or

* Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustee(s).


## LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Guaranty Association is obligated to cover. The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 in life insurance death benefits without regard to the number of policies and contracts there were with the same company, even if they provided different types of coverages. The Guaranty Association will pay a maximum of $500,000 in health benefits, provided that coverage for disability insurance benefits and long-care insurance benefits shall not exceed $300,000. The Guaranty Association will pay $300,000 in present value of annuity benefits, including net cash surrender and net cash withdrawal values. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits. These are limitations under which the Guaranty Association is obligated to operate prior to considering either its subrogation and assignment rights or the extent to which those benefits could be provided from assets of the impaired or insolvent insurer.

## STATEMENT OF INSURANCE COST AND BENEFIT INFORMATION

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY**
**GLOBE LIFE CENTER**
**OKLAHOMA CITY, OKLAHOMA 73184**

| | |
|---|---|
| POLICY NO. | : ████ 6106 |
| INSURED NAME | : Donna M Hartley |
| ISSUE AGE | : 80 |
| POLICY TYPE | : WHOLE LIFE |

| POLICY YEAR | ANNUAL PREMIUM | BEGINNING OF YEAR DEATH BENEFIT | END OF YEAR CASH SURRENDER VALUE |
|---|---|---|---|
| 1 | $1,473.68 | $10,000 | $0.00 |
| 2 | 1,606.58 | 10,000 | 447.90 |
| 3 | 1,606.58 | 10,000 | 956.08 |
| 4 | 1,606.58 | 10,000 | 1,450.64 |
| 5 | 1,606.58 | 10,000 | 1,928.74 |
| 6 | 1,606.58 | 10,000 | 2,387.18 |
| 7 | 1,606.58 | 10,000 | 2,824.36 |
| 8 | 1,606.58 | 10,000 | 3,239.96 |
| 9 | 1,606.58 | 10,000 | 3,633.06 |
| 10 | 1,606.58 | 10,000 | 4,003.20 |
| 11 | 1,606.58 | 10,000 | 4,351.60 |
| 12 | 1,606.58 | 10,000 | 4,679.88 |
| 13 | 1,606.58 | 10,000 | 4,988.86 |
| 14 | 1,606.58 | 10,000 | 5,283.02 |
| 15 | 1,606.58 | 10,000 | 5,568.14 |
| 16 | 1,606.58 | 10,000 | 5,840.72 |
| 17 | 1,606.58 | 10,000 | 6,094.14 |
| 18 | 1,606.58 | 10,000 | 6,326.86 |
| 19 | 1,606.58 | 10,000 | 6,537.38 |
| 20 | 1,606.58 | 10,000 | 6,724.34 |

The policy loan annual percentage interest rate is     8 PERCENT APPLIED IN ARREARS.

### COST COMPARISON INDEXES

| | NET PAYMENT | SURRENDER |
|---|---|---|
| **10 YEAR** | 159.08 | 127.02 |
| **20 YEAR** | 159.72 | 138.00 |

An explanation of the intended use of these indexes is provided in The Life Insurance Buyer's Guide. Any questions regarding this Insurance Summary should be directed to the Company shown above.

**PREPARED:**                                                              CI001P

**11-03-2023**

# EXHIBIT B



Globe Life Center
Oklahoma City, OK 73184

04/01/2025

Debra Jennings
████████████
Marion, AR 72364

RE:     Policy:             ████6106
        Insured:            Donna M Hartley
        Date of Death:      ████/2025
        Application Date:   10/31/2023
        Effective Date:     11/03/2023
        Beneficiary(ies):   Debra Jennings

Dear Ms. Jennings:

We have completed our review of the claim for insurance benefits on the life of Donna M Hartley and we want to explain our findings to you.

When the application was completed by telephone on 10/31/2023, questions were answered regarding Donna M Hartley's past medical history. The insurance policy was issued based on the answers given in the application. Enclosed is a copy of the application for your inspection.

Since the policy was less than two years old, medical information was required to evaluate this claim. The medical information received indicates prior medical conditions which include but may not be limited to a history of left bundle-branch block, nonrheumatic mitral (valve) annulus calcification, depression, anxiety, peripheral vascular disease, neuropathy, and hypertension. Ms. Hartley was on medications and required periodic medical care for these conditions . Based on the medical history, Questions 2(a), 2(b), and 3 were not answered correctly.

If the Company had been aware of Donna M Hartley's medical history at the time of application, we would have been unable to approve them for coverage under this policy. Consequently, we are returning all premiums paid.

(Next Page)

Page Two
Donna M Hartley
Policy: ██████6106


Please be advised that we are not waiving our right to obtain additional medical records or to raise additional grounds for rescission at a later date and to use any information contained in these records to defend our position.

Our decision is based on the medical information we received during the course of our evaluation of this claim. If you have information, which you feel would affect this decision or if you feel the information we received is incorrect, please submit additional material for our review.  We regret we are unable to be of service on this claim.

Sincerely,

Life Benefits

Enclosures:  Copy of Application
             Refund Check will be sent under separate cover


bnt


SLRM

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY * A LEGAL RESERVE STOCK COMPANY**
**ADMINISTRATIVE OFFICE: GLOBE LIFE CENTER * OKLAHOMA CITY, OK 73184**
**APPLICATION FOR INSURANCE**
IMPORTANT: Please be sure each question on the application is answered

| Proposed Insured  Name (First, M.I., Last) | Date of Birth | Sex | Amount of Insurance |
|---|---|---|---|
| Donna M Hartley | ▮▮/43 | FEMALE | $10,000 |

Address ▮▮▮▮▮▮▮▮▮▮▮▮▮        Apt. _____    Telephone (870) 208-3076

City  Harrisburg        State  AR   Zip   72432    E-Mail Address _____

| Beneficiary Name | Relationship to Proposed Insured |
|---|---|
| Debra Jennings | Daughter |

Please answer the following questions. A "yes" response does not automatically make you ineligible for coverage.

|  | YES | NO |
|---|---|---|
| 1. Is the Proposed Insured currently disabled due to illness, confined to a hospital or nursing facility, or does the Proposed Insured require the use of a wheelchair? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _ | X |
| 2. In the past 3 years, has the Proposed Insured been diagnosed or treated by a member of the medical profession for: |  |  |
| (a) Cancer, coronary artery disease, or any disease or disorder of the heart, brain or liver? . . . . . . . . . . . . . . . . . | _ | X |
| (b) Chronic kidney disease or kidney failure, muscular disease, mental or nervous disorder, chronic obstructive lung disease, drug or alcohol abuse, or hospitalized for diabetes? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _ | X |
| (c) Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC) or test results indicating exposure to the Acquired Immune Deficiency Syndrome virus? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _ | X |
| 3. Does the Proposed Insured have any chronic illness or condition which requires periodic medical care or may require future surgery? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _ | X |
| 4. In the past 5 years, has the Proposed Insured had his or her driver's license suspended or revoked; been convicted of any felony; or is the Proposed Insured currently incarcerated? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | _ | X |
| 5. Does the Proposed Insured intend to replace or change any existing life insurance policies or annuities in connection with this application? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | X | _ |

If yes, list company name:  On file at Home Office

**ACKNOWLEDGEMENT AND AUTHORIZATION**

I AM ENCLOSING THE INITIAL PREMIUM AND UNDERSTAND THAT THE INSURANCE APPLIED FOR WILL BECOME EFFECTIVE ON THE DATE THIS APPLICATION IS APPROVED IN THE ADMINISTRATIVE OFFICE OF GLOBE LIFE AND ACCIDENT INSURANCE COMPANY. Should the application be declined, the amount paid will be refunded. I hereby authorize MIB, Inc., if it has any records of me or my health, any pharmacy or pharmacy benefits manager that possesses prescription history about me, and any consumer reporting agency to give any and all such information to Globe Life And Accident Insurance Company. Health information obtained will not be re-disclosed without my authorization unless permitted by law, in which case it may not be protected under federal privacy rules. This authorization shall be valid for two years from this date and may be revoked by sending written notice to Globe Life And Accident Insurance Company. I acknowledge receipt of the MIB, Inc. Pre-Notice. A photographic copy of this authorization will be as valid as the original.

Any person who, with intent to defraud or knowing that he is facilitating a fraud against the insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud, which is a crime punishable by fine and imprisonment.

Date_____10/31/23_____        _____Donna M Hartley_____ / Insured
                                         **APPLICANT – OWNER SIGNATURE / RELATIONSHIP TO PROPOSED INSURED**

This application with check or cash should be mailed in the return envelope enclosed. Make check payable to Globe Life And Accident Insurance Company.

8662(03)

# EXHIBIT C



NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of

**GLOBE LIFE INSURANCE COMPANY OF NEW YORK,**     No. 2018-0085-S

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>CONSENT ORDER</u>

**WHEREAS,** the New York State Department of Financial Services ("DFS" or "Department") commenced an examination (the "Examination") pursuant to the New York State Insurance Law of Globe Life Insurance Company of New York (hereinafter "Respondent");

**WHEREAS,** the Department commenced an investigation ("Investigation") subsequent to the Examination pursuant to Insurance Law Section 308 concerning the Respondent's contestable claim practices for the period of January 1, 2006 through December 31, 2016 (the "Relevant period").

**WHEREAS,** from 2006 through 2016, the Respondent marketed on a direct response basis and sold small face value simplified issue life insurance policies to low- and middle-income consumers in New York.

**WHEREAS,** the Department concluded that the Respondent improperly closed claims when policyholders died within the two-year contestable period without proving in an action a misrepresentation by the policyholder on the application for insurance as required by the Insurance Law;

**WHEREAS,** the Department further concluded that the Respondent engaged in unfair claims settlement practices in violation of the New York Insurance Law by improperly misrepresenting facts and policy provisions relating to coverage and not attempting in good faith to

1

effectuate prompt, fair, and equitable settlements of submitted claims in which liability had become reasonably clear;

**WHEREAS**, the Department further concluded that the Respondent violated Insurance Department Regulations by failing to refer in writing to a specific policy provision, condition, or exclusion in a policy that was the basis for denying a claim, or by not providing a specific reason for disclaiming coverage;

**WHEREAS**, this Consent Order contains the Department's findings and the relief agreed to by the Department and Respondent.

**NOW, THEREFORE,** the Department and Respondent are willing to resolve the matters cited herein in lieu of proceeding by notice and hearing.

## TERMS

1.  For purposes of this Consent Order, the following terms shall have the meanings as set forth herein:

    a.  "Contestable period" means the period of two years dating from a policy's date of issue or from the effective date of certain increases or changes to the policy, after which time a life insurance policy in force during the life of the policyholder becomes incontestable.

    b.  "Contestable claim" is a life insurance claim made during the two-year contestable period.

## FINDINGS

2.  Respondent is a domestic insurance company authorized to transact life, annuities and accident and health insurance business in this State pursuant to Section 1113(a) of the New York Insurance Law.

3.  During the Relevant Period, the Respondent routinely requested medical records from a deceased policyholder's beneficiary or beneficiaries if the death occurred within the contestable period.

4.  If medical records were not produced, the Respondent refused to pay the face amount of the policy. Instead, the Respondent unilaterally closed the claim and notified the beneficiary or

beneficiaries that the policy would not be paid because of the failure to provide medical records as requested.

5.   During the Relevant Period, the Respondent also unilaterally rescinded claims when it received medical records and concluded that the deceased made a material misrepresentation. The Respondent did not obtain these rescissions through a court action. Upon rescission, the Respondent returned the policyholder's premiums to his or her beneficiary or beneficiaries.

6.   As part of its review, the Department evaluated a sample of various types of claims.

7.   For claims in which the policyholder's death was reported by someone other than a beneficiary, the Department's review of records found no evidence that the Respondent's personnel made a good faith attempt to locate the beneficiary or beneficiaries.

8.   When policyholders died during the contestable period, the Respondent requested medical records or other records related to the policyholder's death.  The Respondent closed these contestable claims without payment if it did not receive the policyholder's medical records upon demand to the beneficiary. Respondent did not obtain rescission through a court action or by all beneficiaries agreeing to rescission after being made aware of their rights to contest the rescission claim in an action.

9.   In a sample of 17 contestable claims that were closed without payment of the benefit, the beneficiaries provided the required proofs of death, including a certified death certificate.

10.  During the period covered by the Investigation, the Respondent did not inform beneficiaries of any specific policy provision, condition, or exclusion in the policy that were the grounds of the denial, or cite any specific reason for disclaiming coverage.

## NEW YORK CONTESTABLE CLAIMS

11.  During the Relevant Period, the Respondent had 439 contestable claims with a face amount totaling approximately $7,330,000 in New York State in which the claims were closed without payment or remained pending because the Respondent did not receive medical records and Respondent did not obtain rescission through a court action or by all beneficiaries agreeing to rescission after being made aware of their rights to contest the rescission claim in an action.

**RELEVANT STATUTES, REGULATIONS, AND NEW YORK CASE LAW**

12. Pursuant to Insurance Law Section 3203(a)(3), life insurance policies are incontestable after being in force during the life of the insured for a period of two years from its date of issue or, as to certain increases in the death benefit or changes in other policy provisions, from the effective date of those increases or changes. Pursuant to Insurance Law Sections 3203(a)(3), 3105(a), and 3105(b)(1), within the two-year contestable period, an insurer may only contest a covered claim on the basis of a misrepresentation if the insurer proves a material misrepresentation by the insured on the application for insurance.

13. Insurance Law Section 3105(a) provides that a misrepresentation is a false statement by an applicant concerning past or present fact made to the insurer at or before the making of the insurance contract as an inducement to make the contract, such as a false statement that the applicant has not had a particular disease, ailment, or medical impairment.

14. Under Insurance Law Section 3105(b), a misrepresentation will not avoid or defeat recovery under any insurance policy unless the misrepresentation was material. A misrepresentation is material if knowledge by the insurer of the facts misrepresented would have led to the insurer's refusal to make the contract.

15. Insurance Law Section 3105(d) provides: "If in any action to rescind any such [insurance] contract or to recover thereon, any such misrepresentation is proved by the insurer, and the insured or any other person having or claiming a right under such contract shall prevent full disclosure and proof of the nature of such medical impairment, such misrepresentation shall be presumed to have been material."

16. Under relevant New York jurisprudence, if there is a change in the status quo, such as the death of the insured, then an insurer must obtain rescission through a judicial determination or by all beneficiaries agreeing to rescission after being made aware of their rights to contest the rescission claim in an action.

17. Pursuant to Insurance Law Section 2601(a)(1), (2), and (4), it is an unfair claim settlement practice for an insurer to commit the following acts without just cause and with such frequency to indicate a general business practice:

4

a. Knowingly misrepresenting to claimants pertinent facts and policy provisions relating to coverages at issue;

b. Failing to acknowledge with reasonable promptness pertinent communications regarding claims arising under its policies; and

c. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear.

18. Pursuant to Insurance Regulation No. 64, 11 N.Y.C.R.R. Section 216.3(b), no insurer shall deny any element of a claim on the grounds of a specific policy provision, condition, or exclusion unless reference to such provision, condition, or exclusion is made in writing to the insured, beneficiary, or claimant.

19. Also, pursuant to Insurance Regulation No. 64, 11 N.Y.C.R.R. Section 216.6(d), an insurer shall inform the claimant in writing as soon as it is determined that there was no policy in force or that the insurer is disclaiming liability because of a breach of policy provisions by the policyholder. The insurer must also explain its specific reasons for disclaiming coverage.

20. Respondent for the time period 2006 to 2016:

a. misrepresented facts and policy provisions relating to coverage;

b. failed to acknowledge with reasonable promptness pertinent communications as to claims arising under its policies;

c. failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability had become reasonably clear; and

d. failed to refer in writing to a specific policy provision, condition, or exclusion in the policy that was the ground for denial of a claim, or by failing to provide a specific reason for disclaiming coverage.

21. Respondent's violations during the aforementioned time period contravened New York Insurance Law.

## **VIOLATIONS**

22. By reason of the foregoing,
Respondent violated:
Insurance Regulation No. 64, 11 NYCRR Section 216.3(b) and 216.6(d); and

5

New York Insurance Law Sections 2601(a)(1), (2), and (4).

## AGREEMENT

**IT IS HEREBY UNDERSTOOD AND AGREED** by Respondent, its successors and assigns (on behalf of its agents, representatives, employees, parent company, holding company, and any corporation, subsidiary or division through which Respondent operates) that:

## CEASE AND DESIST

23.     Respondent shall cease and desist the practices found by the Department to have violated the Insurance Law and Regulations.

## OTHER INJUNCTIVE TERMS

24.     In order to comply with the requirements of Insurance Law Sections 2601, 3105, and 3203, Respondent shall adopt the following practices with respect to payment and investigation of contestable claims:

  a.   Respondent, not beneficiaries or a policyholder's estate, bears the burden of investigating claims submitted within the contestable period;

  b.   Respondent may only contest a contestable claim on evidence of a material misrepresentation by the insured on the application for insurance, as provided in Insurance Law Sections 3105(a) and 3105(b)(1);

  c.   The materiality of a misrepresentation shall be whether, had the Respondent known the facts misrepresented, it would have refused to make such contract, as provided in Insurance Law Section 3105(b)(1);

  d.   A presumption of materiality of a misrepresentation shall arise in an action to rescind or defeat recovery, as provided in Insurance Law Section 3105(d);

  e.   If a contestable claim is incurred and there has been a change in the status quo, Respondent shall only obtain a rescission of the policy by prevailing in a court action or by all beneficiaries agreeing to rescission after being made aware of their rights to contest the rescission claim in an action.

6

## **RESTITUTION**

25.  Respondent will correct the violations cited herein and demonstrate to the Department's satisfaction that it has initiated the necessary corrective action within 12 months from the date of Respondent's signing of this Consent Order. Respondent will also take all necessary steps to comply with the New York Insurance Law and Regulations with respect to its insurance products in the future. Within sixty (60) days from the Respondent's signing of this Consent Order, the Company shall provide to the Department a detailed remediation plan which provides restitution to policyholders or their beneficiaries, where applicable, for each violation set forth in paragraph 22 of this Consent Order (the "Violations"). The remediation plan is subject to the Department's approval in its sole discretion. The Department may, as a condition of its approval, impose additional remediation requirements to a plan if necessary to satisfactorily rectify the Violations.

26.  For all identified contestable claims that the Respondent closed without payment, Respondent shall review and pay the face amount of each such policy plus interest dating from the date of death to the date of such payment, unless the Respondent determines, that the insured made a material misrepresentation in his or her application for such policy, as provided in Insurance Law Section 3105 and designates the claim for rescission.

27.  The Third-Party Administrator ("TPA") described in paragraph 31 shall review the claim files designated by the Respondent for rescission and the TPA shall make the final decision before the Respondent formally rescinds the claims.

28.  The TPA will make a determination pursuant to paragraphs 35, 36, and 37 of this Consent Order based on the Department's guidance and Respondent's policy provisions that either the Respondent has a valid basis to rescind each claim or the Respondent is required to pay each claim to the named beneficiary.

29.  The Respondent agrees to be bound by the determination of the TPA.

30.  Any payments described in paragraph 36 shall be reduced by any amounts already paid by Respondent to beneficiaries as premium refunds for rescinded policies.

7

## THIRD PARTY ADMINISTRATOR

31. As soon as practicable, but no later than sixty days from the execution of this Consent Order, DFS shall select an independent TPA to review and administer the contestable claims review and restitution process, as provided in paragraphs 25 through 30 of this Consent Order. Respondent will retain the TPA after the Department's review and approval of the retainer agreement. Respondent shall be fully and solely responsible for all proper fees, expenses, and disbursements of the TPA in connection with the review and restitution process provided for in this Consent Order and the TPA's retainer agreement.

32. The TPA shall, as part of its operations, establish and maintain throughout the duration of its obligations pursuant to this Consent Order, multiple cost-free means for affected beneficiaries to contact it, including an electronic mail address, a website, and a toll-free telephone number.

33. Within thirty days after retention of the TPA, Respondent shall provide the TPA for its review all information in their possession, custody, or control, including but not limited to policy records and complete claims files, for all identified claims made within the contestable period for New York policies that the Respondent has designated for rescission.

34. The TPA may request from Respondent any information and data it reasonably believes it will need to fulfill its obligations under this Consent Order, and Respondent shall provide the requested information and data within seven days of receiving such a request from the TPA.

35. The TPA shall determine, according to the provisions and standards set forth in its retainer agreement, the following:

   a. Which identified contestable claims were lawfully designated for rescission as noted above; and

   b. Which identified contestable claims were unlawfully designated for rescission.

36. For claims that Respondent unlawfully designated for rescission as described in paragraph 35 the TPA shall determine the death benefit to be paid according to the policy. If records for contestable claims unlawfully designated for rescission are incomplete and it is not known whether payment was made, the claims shall be paid according to the policy. Benefits shall be reduced by any amounts already paid by Respondent to beneficiaries, and shall include interest as required by Insurance Law Section 3214(c).

8

37. The TPA shall also identify and locate the beneficiaries of all identified contestable claims Respondent unlawfully designated for rescission.

38. Within thirty days of the TPA's final determination of all amounts owed to affected beneficiaries, Respondent shall wire-transfer to the TPA the total amount owed by Respondent to the beneficiaries.

39. Within thirty days of receiving the wire-transfer described in paragraph 38, the TPA shall deposit in the facilities of the U.S. Post Office, for delivery by prepaid first-class mail to each beneficiary to whom Respondent owes payment, a check in the required amount payable to the individual beneficiary. All checks must be valid for six months. Such payment shall be accompanied by a letter from the Department, in the form annexed hereto as Exhibit A.

40. For any payment to a beneficiary that is returned to the TPA as undeliverable or not deposited within six months, the TPA shall conduct a reasonable search, as provided in its retainer agreement, for a current address. The TPA may cancel checks not deposited within six months. Should the search show a more current address, the TPA shall re-issue a check valid for six months in the amount of the returned or un-deposited check and send the reissued check to the more current address within fifteen days in the manner provided in paragraph 39. After doing so, no further action shall be required by the TPA to complete the mailing process.

41. In the event that a beneficiary does not cash his or her check before the expiration date of the check or the check was returned after the TPA re-posts the check as described in paragraph 43, the TPA shall follow all applicable provisions of the New York Abandoned Property Law, including all reporting, mailing, and remittance requirements.

42. The TPA shall provide reports to the Department as provided in the retainer agreement to confirm compliance with this Consent Order.

43. The TPA's obligations under this Consent Order are satisfied when the process described in paragraphs 35 through 42 is completed.

## **MONETARY PENALTY**

44. Within seven (7) days of the execution of this Consent Order, Respondent shall pay a civil penalty of Four Hundred Thirty-Nine Thousand Dollars ($439,000.00).  Respondent agrees

that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any U.S. federal, state or local tax, directly or indirectly, for any portion of the civil monetary penalty paid pursuant to this Consent Order.

45. The above referenced payment shall be payable to the New York State Department of Financial Services via electronic transfer in accordance with instructions provided by the Department.

## OTHER RELIEF

46. Respondent submits to the authority of the Department to effectuate this Consent Order.

47. Respondent will cease and desist from engaging in any acts in violation of the New York Insurance Law and will comply with this and every other New York law.

48. Unless the Department consents, Respondent may not bring any claim, action, or proceeding against the TPA.

49. Respondent represents and warrants, through the signatures below, that the terms and conditions of this Consent Order are duly approved, and execution of this Consent Order is duly authorized.

## BREACH OF THE CONSENT ORDER

50. In the event that the Department believes Respondent to be materially in breach of this Consent Order ("Breach"), the Department will provide written notice of such Breach to Respondent and Respondent must, within ten (10) business days from the date of receipt of said notice, or on a later date if so determined in the sole discretion of the Department, appear before the Department and have an opportunity to rebut the evidence, if any, of the Department that a Breach has occurred and, to the extent pertinent, to demonstrate that any such Breach is not material or has been cured.

51. The Respondent understands and agrees that Respondent's failure to appear before the Department to make the required demonstration within the specified period as set forth in paragraph 50 is presumptive evidence of Respondent's Breach. Upon a finding of Breach, DFS has all the remedies available to it under the New York Insurance Law, Financial

10

Services Law, or other applicable laws and may use any and all evidence available to DFS for all ensuing hearings, notices, orders, and other remedies that may be available under the New York Insurance Law, Financial Services Law, or other applicable laws.

## **OTHER PROVISIONS**

52.  If Respondent defaults on any of its obligations under this Consent Order, the Department may terminate the Consent Order, at its sole discretion, upon ten (10) days' written notice to Respondent.  In the event of such termination, Respondent expressly agrees and acknowledges that this Consent Order shall in no way bar or otherwise preclude the Department from commencing, conducting, or prosecuting any investigation, action, or proceeding, however denominated, related to the Consent Order, against Respondent or from using in any way the statements, documents, or other materials produced or provided by Respondent prior to or after the date of this Consent Order, including, without limitation, such statements, documents, or other materials, if any, provided for purposes of settlement negotiations.

53.  The Department has agreed to the terms of this Consent Order based on, among other things, representations made to the Department by Respondent and the Department's own factual examination.  To the extent that representations made by Respondent are later found to be materially incomplete or inaccurate, this Consent Order or certain provisions thereof are voidable by the Department in its sole discretion.

54.  Upon the request of the Department, Respondent shall provide all documentation and information reasonably necessary for the Department to verify compliance with this Consent Order.

55.  All notices, reports, requests, certifications, and other communications to the Department regarding this Consent Order shall be in writing and shall be directed as follows:

If to the Department:

New York State Department of Financial Services
One State Street, 19th Floor
New York, NY 10004-1511
Attention: Laura Evangelista, Executive Deputy Superintendent for Insurance

11

If to the Company:

Globe Life Insurance Company of New York
1020 Seventh North Street
Liverpool, New York 13088
Attention: Joel Scarborough, Senior Vice President and Associate General Counsel

With a copy to:

Sidley Austin LLP

787 Seventh Avenue

New York, New York 10019

Attention: Ellen Dunn

56. This Consent Order and any dispute thereunder shall be governed by the laws of the State of New York without regard to any conflicts of laws principles.

57. Respondent waives its right to further notice and hearing in this matter as to any allegations of past violations up to and including the Effective Date and agrees that no provision of the Consent Order is subject to review in any court or tribunal outside the Department.

58. This Consent Order may not be amended except by an instrument in writing signed on behalf of all parties to this Consent Order.

59. This Consent Order constitutes the entire agreement between the Department and Respondent relating to the violations identified herein and supersedes any prior communication, understanding, or agreement, whether written or oral, concerning the subject matter of this Consent Order. No inducement, promise, understanding, condition, or warranty not set forth in this Consent Order has been relied upon by any party to this Consent Order.

60. In the event that one or more provisions contained in this Consent Order shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Consent Order.

61. Upon execution by the parties to this Consent Order, no further action will be taken by the Department against Respondent for the conduct set forth in this Consent Order, subject to the terms of this Order.

62. This Consent Order may be executed in one or more counterparts, and shall become effective when such counterparts have been signed by each of the parties hereto and So Ordered by the Superintendent of Financial Services.

GLOBE LIFE INSURANCE COMPANY OF NEW YORK

By: _____ Dated: JANUARY 21, 2019
    Joel Scarborough
    Senior Vice President and Associate General Counsel

NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES

By: _____ Dated: 1 / 25 / 19
    Laura Evangelista
    Executive Deputy Superintendent for Insurance

*THE FOREGOING CONSENT ORDER IS HEREBY APPROVED.*

By: _____ Dated: 1 / 28 / 19
    Maria T. Vullo
    Superintendent of Financial Services



State of Texas
County of COLLIN
Sworn and subscribed before me on the 21 day of 2019
by Joel Scarborough.

_____
Notary Public's Signature

KELLY KINSER
My Notary ID # 2171722
Expires August 1, 2021

13

[Date]

[Beneficiary's Address]

Dear [Beneficiary],

You are receiving this notice pursuant to a settlement reached between Globe Life Insurance Company of New York ("Globe") and the New York State Department of Financial Services. The settlement concerns the contestable claims practices of Globe.

Records indicate that you are the beneficiary of a policy, [Globe Policy ####], that is affected by this settlement. We write to notify you that, pursuant to the settlement with the New York State Department of Financial Services, Globe is paying the face amount of this policy, plus interest dating from the policyholder's date of death. This amount may be reduced by amounts already paid as premium refunds for improperly rescinded policies.

This settlement was obtained by the New York State Department of Financial Services. Nothing in the settlement prevents or limits you from pursuing any right or remedy at law you may have or requires you to release any rights.

If you have any further problems regarding Policy [###], or if you have questions concerning this settlement or any refund provided, you can contact the New York State Department of Financial Services at 1-800-342-3736 and at [email address to be provided], or you may contact the Third Party Administrator, [name of TPA], that is administering this settlement at [toll-free number], [email address], or [website].

Sincerely,

14